JOHN W. HUBER, United States Attorney (#7226)
CRISTINA P. ORTEGA, Assistant United States Attorney (#9567)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682
Email: cristina.ortega@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| UNITED STATES OF AMERICA, | Case No. 1:19-CR-00036 JNP |
|---|---|
| Plaintiff, | UNITED STATES' SENTENCING MEMORDANDUM |
| vs. | |
| SAID EL BOUAZZAOUI, | Judge Jill N. Parrish |
| Defendant. | |

The United States of America, through the undersigned Assistant United States Attorney, Cristina P. Ortega, hereby files this Sentencing Memorandum. For the reasons listed below, and those to be articulated at the sentencing hearing currently scheduled for February 21, 2020, the United States respectfully recommends this Court sentence the Defendant to a term of 57 months' imprisonment, a sentence within the guidelines provided in the pre-sentence report. (PSR, ¶ 51). It is the position of the United States that the high end guideline of 57 months' imprisonment properly reflects the factors in 18 U.S.C. § 3553(a). Although the Defendant does not have a criminal history, the conduct in this case warrants a high end recommendation. The recorded conversation between the Defendant and the 13 year old girl he believed he was talking to provides a glimpse into the mind and intent of the Defendant to engage in sexual activity with a minor in exchange for money. Overall, the sexually explicit conversation and the findings from

the psychosexual evaluation show that the Defendant does pose a risk of danger to the community.

### A. Nature of Circumstances of the Offense

On March 18, 2019, at approximately 10:36 a.m., the Defendant engaged in an online conversation via a social media application called "Skout" with someone the Defendant believed was a 13 year old female named Peyton. However, Peyton was actually a fictitious profile created by FBI Task Force Officer Jon Peirce during the course of an investigation focused on the sexual exploitation of minors. The Skout profile displayed Peyton's age to be 19 but during conversations with the Defendant Peyton told the Defendant she was 13 years old.

The Defendant began the conversation by asking Peyton if she wanted some cash. After Peyton asked the Defendant what he meant by that the Defendant stated "1h meet up 220$." During the course of the investigation it was determined that "1h" meant one hour. The following conversation progressed between the Defendant and Peyton. This conversation was recorded and documented by Task Force Office Jon Peirce. Timestamps are included to provide a point of reference and also to demonstrate that rapid progression of the conversation leading up to the Defendant's arrest.

> Defendant: Want some cash (10:36 a.m.)
> Peyton: Wow
> Defendant: Wsup
> Peyton: That's a lot of money
> Defendant: Want make some of it
> Peyton: How
> Defendant: 1 h meet up 220$
> Peyton: I'm still in school so you don't want that ☺
> Defendant: I have no prob
> Defendant: If u want too
> Peyton: (laughing emoji) sounds amazing but I'm 1 3
> Defendant: R u virgin
> Peyton: No
> Defendant: OK do you have a full body pic

Peyton: Yes why
Defendant: Let me see what u have
Peyton: Pic (sports bra and underwear)
Defendant: Is this urs
Defendant: Show me that ass
Peyton: I'm not sharing my stuff all over
Defendant: It's just 1 more pic
Defendant: And tell. Me where to meet you
Peyton: What do I have to do to get that money?
Defendant: We gonna have some private fun
Defendant: Abt 1h20min
Defendant: And u get 220$
Peyton: I'm not meeting s stranger without knowing what we are doing
Defendant: U know what's private fun means
Defendant: That's what are we doing
Peyton: No I don't know what that means
Peyton: Like sex"? Since you asked if I'm a virgin?
Defendant: YeA
Peyton: Do you have a condom?
Defendant: I am clean
Defendant: I check my std regularly
Peyton: Let me see your face
Defendant: Ok but one question are you affiliated with any cops activities
Peyton: No but I want $220
Defendant: Low enforcement
Defendant: Ok I have cash
Defendant: [Sends pic of himself by a window overlooking a city.]
Peyton: And don't talk about this I'm not getting in trouble
Defendant: Me too I don't won't trouble
Peyton: Ok hold on
Defendant: Let me see u pic of your face with no filters
Peyton: [Sends pic of female (face)]
Defendant: OK when to meet you ND where
Peyton: How far from Farmington are you
Defendant: 20/25 min
Defendant: So
Peyton: Come get me by the library 153 S main st is my house there is a lot of parking.
Peyton: What are you driving
Defendant: OK I'll start driving now
Defendant: What's ur number
Peyton: You can't call me my mom sees the bill I'm not getting caught doing this just text on this
Defendant: Ok (11:05 am)
Defendant: Almost there how far is it from ur home
Peyton: That address is my house

3

>Peyton: Just park in the parking lot and I'll come to you
>Peyton: Don't park at my house though
>Defendant: OK do u know chevron gas station
>Peyton: Ya
>Peyton: Why
>Defendant: Do you want to meet somewhere around it
>Peyton: Ok
>Peyton: What are you driving?
>Peyton: So?
>Defendant: Come over I will tell u where I parked when u arrive
>Defendant: How far you are
>Peyton: Where?
>Defendant: Are u here
>Peyton: (Laughing emoji)
>Peyton: Yes but where do I walk
>Defendant: U see the back of state farm
>Defendant: There is Coca-Cola truck
>Defendant: Iam. Behind it. (11:44 a.m.)
>Peyton: Is that by chevron?
>Defendant: Yea where u at
>Peyton: Your kinda freaking me out
>Peyton: Where are you (11:49 a.m.)
>Defendant: I don't see you
>Defendant: Where are u
>Peyton: I'm inside chevron
>Defendant: Come out to state st and 100 st
>Defendant: Rock hotel dental
>Peyton: Where are you (11:56 a.m.)

After this last exchange, the Defendant was arrested in Farmington, Utah. Search incident to his arrest $240 cash was found in the Defendant's wallet. Post-Miranda, the Defendant initially stated he did not know "the girl" and that he did not meet her. He also stated he did not plan to give Peyton any money. He stated the cash he had in his wallet was for gas. He maintained that he would never talk to anyone underage. He stated he was only driving around when he stopped at the Chevron to get some coffee.

Later, however, the Defendant did confirm that he used the "Skout" social media application and that he engaged in communications with Peyton. He stated that her Skout profile said she was 19 years old so he did not believe Peyton when she told him she was 13 years old in

4

their conversation. He maintained during the entire interview that he went by the profile age not the age Peyton told him in their conversation. The Defendant maintained that Peyton was really 19 years old and that she lied to him when she told him she was only 13 years old. Furthermore, the Defendant stated it was Peyton who initiated the conversation about money contrary to the conversation that law enforcement recorded and documented as outlined above. When confronted about offering Peyton cash for sexual activity as well as other conversations with other individuals on his "Skout" app where he offered money, the Defendant maintained he did not offer anyone money for sexual activity. He stated he only represented to offer cash to people to "get their attention" because no one would engage in conversations with him otherwise.

The Defendant was in Utah as part of his truck route as a semi-truck driver. He had been traveling from Texas to Utah and was on his way to Colorado on the day of his arrest. He had dropped off a load in Salt Lake County and was waiting to pick up another load in Salt Lake County on that date of his arrest. The Defendant further stated he spent most of his time traveling as a semi-truck driver across the country and therefore, was only home in Pennsylvania four days a month.

### B. *History and Characteristics of the Defendant*

Although the Defendant does not have a criminal history, the Defendant's conduct in this case is very concerning when one takes into account the Defendant's background and the psychosexual evaluation completed by Dr. Jonathan J. Ririe. There are several statements made by the Defendant in the psychosexual evaluation that contradict the recorded conversation. First, the Defendant told Dr. Ririe he offered to spend money on others via Skout to get them to respond to him. He specifically told Dr. Ririe that his plan was to spend the money on taking them out to dinner. (Psychosexual Eval. P. 4). Later, when asked about this incident, the

Defendant described meeting up with Peyton for "fun." (Psychosexual Eval. P. 5). However, the recorded conversation shows otherwise. The focus of the conversation focused solely on offering money for sex. The Defendant got straight to the point in the conversation and made it clear he would pay $220 for one hour of sex.

The psychosexual evaluation further confirmed that the Defendant appears to engage in conduct that provides immediate gratification. (Psychosexual Eval. P. 6). This finding combined with the assessment that the Defendant is emotionally immature and exercises poor judgment does not bode well for the Defendant especially when one focuses on the recorded conversation. It is the position of the United States that the recorded conversation is the Defendant at his most candid self, outside of the supervision of his family and the observation and assessment of Dr. Ririe. The Defendant was aware that his conduct was wrong when he asked Peyton if she was law enforcement after Peyton told him she was 13 years old.

The lack of impulse control is further evident when the Defendant made it his plan to drive from Salt Lake County to Davis County to meet with who he believed to be a 13 year old girl for sex. Although Dr. Ririe found that the Defendant suffers from issues of inadequacy and immaturity, these findings coupled with the Defendant's lack of judgment and impulsivity pose a serious risk of danger to the community. Just as it was stated in the Defendant's sentencing memorandum "when a young girl, or what he believed could be a young girl, expressed interest, he did not turn away." (Def. Memo p. 5). The rapid progression of the conversation leading up to the Defendant driving from Salt Lake County to Davis County to engage in sexual activity with a 13 year old in exchange for money further demonstrates the Defendant's intent which runs contrary to any statements he made to law enforcement or Dr. Ririe.

### C. The Need for the Sentence Imposed

It is the position of the United States that the high end of the recommended guidelines, 57 months, is appropriate as it relates to the Defendant's conduct. This case is unique because the undercover investigation provided a first-hand glimpse into the mind of the Defendant as to what his intentions were the day of his arrest. If one were to only focus on the Defendant's background and observations from Dr. Ririe that the Defendant is reluctant to risk approaching girls, one would miss out in seeing the Defendant when he is not under the supervision and judgment of others. (Psychosexual Eval. P. 3). The recorded communications show what the Defendant is capable of doing when he is alone and no longer accountable to his family in another country. The Defendant's sentencing memorandum eluded that the conduct in this case occurred because the Defendant was lonely, dealing with a strange and foreign culture, and as a result of his low self-esteem, immaturity and poor judgement. However, it is precisely this combination of issues that make the Defendant a danger to the community.

Even though the Defendant may maintain that he was searching for "an appropriately aged woman," the recorded conversation shows otherwise. The psychosexual evaluation supports this observation of the United States. In his summary and recommendations, Dr. Ririe indicated that the Defendant suffers from social inadequacies including *deficits in interacting with age appropriate females*. (Psychosexual Eval. P. 8)(emphasis added). It is this finding that further confirms that the Defendant's statements in the recorded conversation with Peyton are the Defendant at his most candid. His first statement to Peyton was "want some money" followed up by "1hr meetup $220." Even though Peyton told the Defendant she was still in school and was only 13 years old, the Defendant did not question this statement as to her age but moved on to asking her if she was a virgin. There is no evidence in the conversations that the Defendant

7

doubted he was talking to a minor. To the contrary, the Defendant asked Peyton if she was law enforcement because he did not want to get into trouble for meeting up with a 13 year old girl.

And once he was apprehended and arrested, the Defendant was not honest with law enforcement. He initially told law enforcement he did not know "the girl." He denied he was there to pay for sex and told law enforcement he was only driving around and stopped to get coffee. Furthermore, the Defendant told law enforcement that it was Peyton who initiated the conversation about money. This is why the recorded conversation in this case is important in capturing the risk of danger the Defendant poses to the community. Therefore, under the circumstances of this case, it is the position of the United States that the high end guideline of 57 months' imprisonment addresses the seriousness of the offense, promotes respect for the law, and provides a just punishment.

## *Conclusion*

The United States respectfully requests that the Court impose the high end guideline of 57 months' imprisonment. Although the Defendant does not have a criminal history, the conduct in this case warrants a high end recommendation. The recorded conversation between the Defendant and the 13 year old girl he believed he was talking to provides a glimpse into the mind and intent of the Defendant to engage in sexual activity with a minor in exchange for money. Overall, the sexually explicit conversation and the findings from the psychosexual evaluation show that the Defendant poses a risk of danger to the community.

DATED this 18th day of February, 2020.

JOHN W. HUBER<br>
United States Attorney<br>
<br>
*/s/ Cristina P. Ortega*<br>
CRISTINA P. ORTEGA<br>
Assistant United States Attorney